Jeffrey **WINES** and Brett
Wines, Appellants,

v.

**LAKE HAVASU BOAT
MANUFACTURING,
INC., Appellee.**

No. 87–5426.

United States Court of Appeals,
Eighth Circuit.

Submitted March 30, 1988.

Decided May 6, 1988.

Thomas J. Hunziker, Minneapolis, Minn., for appellants.

Michael A. Stern, Minneapolis, Minn., for appellee.

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit Judges.

PER CURIAM.

Jeffrey and Brett Wines (appellants) appeal from the district court's[1] order dismissing this diversity action for lack of personal jurisdiction. We affirm.

Appellants are brothers and residents of Minnesota. In 1984 they contacted Lake Havasu Boat Manufacturing, Inc., (Lake Havasu), an Arizona corporation, regarding the purchase of a Biesemeyer jet boat. Following appellants' numerous telephone calls to Lake Havasu, Jeffrey travelled to Arizona and bought a Biesemeyer boat. Shortly thereafter, appellants' brother, Roderick, purchased a similar boat in Arizona. Brett negotiated the purchase of a third boat in the spring of 1985, but cancelled his order when the boat was not completed on schedule.

On June 21, 1986, appellants were cruising in Jeffrey's boat on a small lake in Minnesota, when the nose of the boat suddenly ploughed underwater and appellants were thrown from the boat. The boat sank. When it was recovered, appellants discovered that the steel grate covering the water intake valve had become dislodged and was wedged into the intake area. Appellants alleged that this was the cause of the accident.

Appellants filed suit in Minnesota state court, alleging negligent design and manufacture, and breach of express and implied warranties as to Jeffrey's boat; and breach of the contract for the sale of the boat to Brett. On December 17, 1986, Lake Havasu removed the suit to federal court and moved for dismissal on the basis of lack of personal jurisdiction. The court reserved its ruling in order to permit appellants to conduct additional discovery on the jurisdictional issue.

Further discovery revealed that sometime in 1975, appellants' father, Fred Wines, had been granted the exclusive right to sell and service Biesemeyer boats in Minnesota, by a Mr. Pettingil. Fred Wine's corporation sold Biesemeyer boats in Minnesota until 1981 when its general manager left, taking with him the exclusive distributorship of Biesemeyer boats. In 1982 Norm Brown, Inc., an Arizona corporation, purchased the trademark of Biesemeyer Boats from Pettingil, but did not purchase the liabilities or succeed to the business operation. Norm Brown, Inc., was liquidated in 1983 and its successor in interest is Lake Havasu.

Lake Havasu is a small, regionally-oriented boat manufacturer with its sole place of business in Lake Havasu City, Arizona. It employs seven Arizona residents, transacts nearly all of its business in California and Arizona, has never transacted any business in Minnesota, has never had agents, sales representatives, offices, bank accounts, an address or a telephone in Minnesota, and has never used or possessed real or personal property in Minnesota.

In 1983 and 1984 Lake Havasu advertised the Biesemeyer boat in a nationally distributed boat publication. The advertisement read: "Your choice of interiors, power, and drive systems. Demo models available to test in Lake Havasu City or see us at your closest major boat show." From 1982 through 1985 Biesemeyer boats were displayed in Los Angeles, Anaheim, and San Diego boat shows.

---

1. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

The district court granted the motion to dismiss, determining that the sales of two boats in Arizona to members of the Wines family were isolated sales and not a continuing business arrangement, and that Lake Havasu did not regularly sell boats to Minnesota residents. Moreover, the court determined that any relationship between appellants' father and Pettingil, existing prior to the purchase of the Biesemeyer trademark by Norm Brown, Inc., was irrelevant to the issue of the court's exercise of personal jurisdiction over Lake Havasu. We affirm.

In reviewing the district court's determinations regarding personal jurisdiction based on written submissions, this court must view the facts in the light most favorable to appellants. *See Watlow Elec. Mfg. Co. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir.1988). Once jurisdiction has been challenged, the plaintiff bears the burden of proving the existence of jurisdiction. Once the plaintiff makes out a prima facie showing, the burden shifts to the moving party to show a lack of jurisdiction. *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 653 (8th Cir.1982) (citations omitted).

The inquiry into whether a federal court may exercise personal jurisdiction over a nonresident party is twofold: (1) whether the facts presented satisfy the forum state's long-arm statute, and (2) whether the nonresident has "minimum contacts" with the forum state, so that the court's exercise of jurisdiction would be fair and in accordance with due process. *See Watlow*, 838 F.2d at 1001.

Minnesota's long-arm statute authorizes the state to assert personal jurisdiction over a foreign corporation that commits any act outside Minnesota which causes injury or property damage in Minnesota. *See* Minn.Stat.Ann. § 543.19(1)(d) (West Supp.1988). The tort claims in this case clearly fall within this provision. Minnesota courts have construed the long-arm statutes as authorizing personal jurisdiction over nonresident defendants to the maximum extent allowed by the due process clause of the United States Constitution.

*See Vikse v. Flaby*, 316 N.W.2d 276, 281 (Minn.1982).

The Due Process Clause ensures that a nonresident "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted). *See also Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 & n. 8, 9, 104 S.Ct. 1868, 1872 & n. 8, 9, 80 L.Ed.2d 404 (1984). In the Eighth Circuit the "minimum contacts" standard involves consideration of five factors: (1) the nature and quality of contacts with the forum state; (2) the quantity of these contacts; (3) the relationship between the contacts and cause of action; (4) the interest of the forum state; and (5) the convenience of the parties. *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir.1983).

As a threshold matter, appellants argue that because Lake Havasu exists in essentially the same form as its corporate predecessors, the predecessors' Minnesota contacts should be attributed to Lake Havasu. However, there is no evidence that Lake Havasu is a successor corporation to either Pettingil's or Wines's corporation. To the contrary, the record reveals that Lake Havasu's predecessor purchased certain assets from Pettingil but did not assume any liabilities. Furthermore, there is no evidence of any connection between Lake Havasu and appellants' father or with the general manager after he left Wines's corporation. *Cf. Scott v. Mego Int'l, Inc.*, 519 F.Supp. 1118, 1125–26 (D.Minn.1981) (nonresident parent corporation may subject itself to jurisdiction by virtue of its subsidiary's activities in that state if the companies are operated so that one corporation is an instrumentality or adjunct of the other corporation). Accordingly, the extent to which Minnesota can constitutionally exercise personal jurisdiction over Lake Havasu must be determined only by reference to Lake Havasu's contacts with Minnesota.

In this case, the record reveals that Lake Havasu has no direct contacts with Minnesota. Moreover, this court has held that "[m]erely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident party] and the forum state." *Iowa Elec. Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir.1979) (nonresident seller), *cert. denied*, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980). Appellants' telephone calls to Lake Havasu are the very kind of "unilateral activities" this court has found insufficient to establish personal jurisdiction. *See Institutional Food Mktg. Assoc. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 456 (8th Cir.1984) (phone conversations and written correspondence insufficient contacts); *Mountaire Feeds Inc.*, 677 F.2d at 656 (conversations and correspondence insufficient even where defendant used forum-state bank to arrange payments).

The sole contact between Lake Havasu, this lawsuit, and Minnesota is Lake Havasu's advertising of its product in a nationally distributed trade publication which is circulated in Minnesota. It does not appear from the record, however, that Lake Havasu's advertising represents a purposeful availment of the benefits and protections of Minnesota law. Rather, it appears that Lake Havasu concentrated its sales in Arizona and California and in an effort to increase sales in those states, advertised in a national publication. Although the advertisement implied that the boats would be displayed at nearby boat shows, they were never displayed in any boat shows outside Arizona and California. Accordingly, Minnesota can not constitutionally assert jurisdiction on the basis of this advertising. *See Scheidt v. Young*, 389 F.2d 58 (3d Cir.1968) (per curiam); *Erickson ex rel. Erickson v. Spore*, 618 F.Supp. 1356 (D.Minn.1985).

Finally, we conclude that the stream-of-commerce theory of personal jurisdiction articulated in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), is inapplicable under the facts of this case because

Lake Havasu did not "serve, directly or indirectly, the market for its product," in states other than Arizona and California. *Id.* at 297, 100 S.Ct. at 567.

Accordingly, the judgment of the district court is affirmed.