**Leamon Thurman GOULD, Appellant,**

**v.**

**P.T. KRAKATAU STEEL, Appellee.**

**No. 91–2514.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 7, 1992.

Decided Feb. 24, 1992.

Rehearing and Rehearing En Banc Denied April 9, 1992.

Winslow Drummond, Little Rock, Ark., argued (Marc I. Baretz, West Memphis, Ark., on brief), for appellant.

Bettina E. Brownstein, Little Rock, Ark., argued (Alston Jennings, Sr., on brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Leamon Gould appeals from the district court's[1] order granting P.T. Krakatau Steel's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), 765 F.Supp. 980. We affirm.

## I. BACKGROUND

P.T. Krakatau Steel ("Krakatau"), an Indonesian corporation with its principal place of business in Jakarta, Indonesia, manufactures steel products. Krakatau has no offices, agents or property located in the United States and all of its manufacturing and sales take place in Indonesia. In August of 1986, Krakatau placed an advertisement in the "Metal Bulletin," a steel industry journal published in the United Kingdom and distributed worldwide. In the advertisement Krakatau stated that its products complied with international standards, including the American Standards for Testing and Materials (ASTM). During 1987, Krakatau's general manager and marketing director met twice with representatives of Empire Steel Trading Company, Inc. ("Empire"), a New York corporation with its principal place of business in New York. The meetings took place in San Francisco, California and New York. On

---

1. The Honorable Elsijane T. Roy, Senior United States District Judge for the Eastern District of Arkansas.

November 6, 1987, Krakatau and Empire entered into a contract for the sale of approximately 14,000 metric tons of Krakatau products, f.o.b. Indonesia. Empire accepted delivery of the products in Indonesia, transported the products to the United States and sent approximately 3,000 metric tons of the total shipment of cast wire rods to Forbes Steel in West Memphis, Arkansas.[2] Leamon Gould, a Forbes employee, brought this products liability action against Krakatau for permanent injuries he received while unpacking the wire rods at the Forbes plant in August of 1988. The district court dismissed the complaint finding that Krakatau had insufficient contacts with the state of Arkansas to support in personam jurisdiction. Gould appeals.

## II. DISCUSSION

■ We review de novo the question of whether the nonmoving party has established a prima facie case of personal jurisdiction. *Dakota Industries v. Dakota Sportswear*, 946 F.2d 1384, 1387 (8th Cir. 1991). The burden of proof is on the party seeking to establish the court's in personam jurisdiction and the burden does not shift to the party challenging jurisdiction. *Newhard, Cook & Co. v. Inspired Life Centers, Inc.*, 895 F.2d 1226, 1228 (8th Cir. 1990). Because this is a diversity of citizenship case, we must look to Arkansas law for the basis of in personam jurisdiction over the nonresident defendant, limited by the Due Process Clause of the United States Constitution. *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 653 (8th Cir.1982). Gould argues that under the Arkansas "long-arm" statute, the district court may exercise personal jurisdiction over Krakatau.[3]

■ We must make a two-part inquiry into the existence of in personam jurisdiction under Arkansas' long-arm statute.

We must first determine whether the facts of the case satisfy the state long-arm statute, *Wines v. Lake Havasu Boat Mfg., Inc.*, 846 F.2d 40, 42 (8th Cir.1988); if so, we must then determine whether Arkansas' exercise of jurisdiction over Krakatau is consistent with the Due Process Clause of the Fourteenth Amendment. *Id.* Because Arkansas' long-arm statute extends jurisdiction over nonresidents to the limits permitted by the due process clause of the United States Constitution, *Nix v. Dunavant*, 249 Ark. 641, 460 S.W.2d 762, 763 (1970), our inquiry is limited to whether the district court's exercise of jurisdiction over Krakatau is consistent with due process. *Soo–Line Railroad v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991).

■ Due process permits the exercise of personal jurisdiction over a nonresident defendant only when there are "sufficient 'minimum contacts' between the nonresident defendant and the forum state so that the assertion of personal jurisdiction over the nonresident defendant is consistent with traditional notions of fair play and substantial justice." *Mountaire*, 677 F.2d at 654, (citing *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). In assessing the sufficiency of contacts, we focus on the relationship "among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

■ Because due process focuses on the fundamental fairness of exercising jurisdiction over a nonresident defendant, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus in-

---

**2.** Although the total cost of the shipment was disputed, the district court found the cost exceeded $900,000.00.

**3.** The relevant provision of the Arkansas long-arm statute, Ark.Code.Ann. § 16–4–101 C.1(d) (1987) provides in pertinent part:

A court may exercise personal jurisdiction over a person, who acts directly or by an

agent, as to a cause of action arising from the person's ... causing tortious injury in this State by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct in this state or derives substantial revenue from goods consumed or services used in this state.

voking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The Due Process Clause requires that nonresident defendants have "fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign." *Shaffer*, 433 U.S. at 218, 97 S.Ct. at 2587 (Stevens, J., concurring). This " 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (citations omitted). The contacts with the forum must be more than " 'random,' " " 'fortuitous,' " or " 'attenuated.' " *Id.* at 475, 105 S.Ct. at 2183 (citations and footnotes omitted).

■ This court has consistently weighed the following factors in its consideration of the due process standard: the nature and quality of defendant's contacts with the forum state; quantity of contacts; source and connection of the cause of actions with those contacts; and, to a lesser degree, the interest of the forum state in providing a forum for its residents; and the convenience of the parties. *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir.1977).

■ Gould contends Krakatau had significant contact with the state of Arkansas by virtue of its advertising in a British trade journal circulated worldwide, the physical presence of Krakatau officers in the United States to solicit business, and the continual sales of Krakatau products to the United States. We disagree. In applying the principles set forth above, we conclude the exercise of personal jurisdiction over Krakatau would offend traditional notions of fair play and substantial justice. Although we recognize that Arkansas has an strong interest in providing a forum for an injured resident to bring a products liability action against a nonresident defendant, we find there are insufficient contacts between Krakatau and Arkansas to satisfy due process.

■ Krakatau is an Indonesian corporation; it is not licensed to do business in the state of Arkansas, nor does it have any office, agent, property, bank accounts or business operations in the state. Krakatau does not advertise or solicit any business in the state, nor does it specially design or tailor its products for use in Arkansas. We disagree with Gould's contention that Krakatau's advertisement in a British trade publication establishes minimum contacts with the state of Arkansas. Krakatau's advertisement, which states that it complies with international standards for steel products, is an insufficient contact with the forum state to satisfy due process. *See Soo Line*, 950 F.2d at 528 (compliance with international railroad standards deemed insufficient contact with forum state).

■ Furthermore, Krakatau's placement of the wire rods into the stream of international commerce is not an act "purposefully directed" toward the state of Arkansas. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). Krakatau's contact with Arkansas consisted only of the "fortuitous" introduction of Krakatau products into Arkansas by Empire. *Hutson v. Fehr Bros., Inc.*, 584 F.2d 833, 837 (8th Cir.1978), *cert. denied*, 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 654 (1978). Gould argues that Krakatau could have foreseen that its products would enter the state of Arkansas by virtue of its sales to Empire. We disagree. Although it is arguable that Krakatau could have foreseen that its products would enter the United States, it is highly unlikely that Krakatau could have reasonably anticipated being haled into an Arkansas court. *Humble v. Toyota Motor Co., Ltd.*, 727 F.2d 709, 710 (8th Cir.1984). At most, Krakatau conducted a limited amount of business with Empire and it was solely at Empire's direction that the wire coils arrived in Arkansas. Standing alone, the fact that the Krakatau could foresee that its product might find its way to Arkansas is too attenuated to constitute purposeful availment of Arkansas' laws and protections. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct.

559, 567, 62 L.Ed.2d 490 (1980); *Soo–Line,* 950 F.2d at 529 (contact with a market does not substitute for contact with a forum state). It would be manifestly unjust to require Krakatau to defend itself in a foreign country based on these contacts between Krakatau and the state of Arkansas.

## III. CONCLUSION

We hold the district court properly concluded there are insufficient contacts between the state of Arkansas and Krakatau to support the exercise of personal jurisdiction over Krakatau and, accordingly, we affirm.