Andre Q. **BELL**, Plaintiff,

v.

Joseph M. **FISCHER**, Defendant.

No. C 93–4104.

United States District Court,
N.D. Iowa,
Western Division.

June 1, 1995.

William J. Lane, William J. Lane, P.C., Sioux City, IA, for plaintiff.

Alison McGinn, Gross & Welch, P.C., Omaha, NE, for defendant.

## ORDER REGARDING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND PROCEDURAL BACKGROUND .................. 1272

II. FINDINGS OF FACT ............................................. 1273

III. LEGAL ANALYSIS ............................................. 1274
 A. Review Of A Report And Recommendation ............................. 1274
 B. Challenges To Personal Jurisdiction ..................................... 1274
 1. Analytical process ............................................. 1276
 2. Long-arm authority ........................................... 1276
 3. Minimum Contacts ........................................... 1277
 a. Specific vs. general jurisdiction .................................. 1278
 b. The five-factor test ........................................... 1279
 c. Quantity, quality, and relatedness of contacts ...................... 1279
 d. "Secondary factors" ........................................... 1280

IV. CONCLUSION .................................................. 1280

In this lawsuit for breach of contract to purchase a dental practice, the defendant has moved to dismiss for lack of personal jurisdiction. Defendant argues that no contract

was ever entered into in Iowa or anywhere else for the purchase of the dental practice, which was located in Kansas. Furthermore, defendant argues that his only contact with the state of Iowa was a brief meeting with the plaintiff at a town in Iowa on an interstate highway chosen for its convenience to both parties. Defendant argues that this lone contact with this state was too fortuitous and attenuated to establish the personal jurisdiction of Iowa courts over him. Upon referral of the matter pursuant to 28 U.S.C. § 636(b), the chief magistrate judge recommended denial of the motion to dismiss. Defendant has filed objections to the magistrate's report and recommendation, and this court therefore conducts a de novo review of the question of personal jurisdiction over the defendant pursuant to *Fed.R.Civ.P.* 72(b). Additionally, at the request of the defendant, this court has held an evidentiary hearing on the personal jurisdiction question rather than considering only the adequacy of the plaintiff's *prima facie* showing of personal jurisdiction.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Andre Q. Bell filed the complaint in this matter on November 17, 1993, alleging breach of a contract to purchase a dental practice located in Garnett, Kansas. Bell is a resident of Knoxville, Iowa, but was a resident of Cherokee, Iowa, at the time of the events in question here. Defendant Joseph M. Fischer was a resident of Humboldt, Nebraska, at the time this lawsuit arose, but now resides in Belleville, Kansas.

On December 17, 1993, in lieu of answering Bell's complaint, Fischer moved to dismiss for improper venue pursuant to *Fed.R.Civ.P.* 12(b)(3). Bell resisted the motion to dismiss for improper venue on January 11, 1994. On

February 14, 1994, Fischer filed an amended motion to dismiss also asserting lack of personal jurisdiction pursuant to *Fed.R.Civ.P.* 12(b)(2). Fischer contends that he does not have sufficient minimum contacts with this state to establish personal jurisdiction of Iowa courts over him. Bell resisted the amended motion to dismiss, arguing that Fischer has sufficient minimum contacts.

On August 2, 1994, the Hon. Donald E. O'Brien, now Senior Judge, entered an order denying the motion to dismiss for improper venue, but not reaching the personal jurisdiction question. On September 26, 1994, this matter was referred to Chief Magistrate Judge John A. Jarvey for the purposes of hearing any and all pretrial matters, including dispositive motions, pursuant to 28 U.S.C. § 636(b)(1)(A), (B) & (C) and N.D. Ia. LR 32.

On March 8, 1995, Judge Jarvey filed a Report and Recommendation in this matter pursuant to 28 U.S.C. § 636(b) recommending denial of defendant's amended motion to dismiss for lack of personal jurisdiction. In denying the motion to dismiss, Judge Jarvey concluded that the meeting in Onawa was an important step in the negotiation of the alleged contract for the purchase of the dental practice, but recognized that the selection of Onawa as the place for that meeting was simply based on the mutual convenience of the parties. Finding that the facts stated by Fischer as indicating his lack of contacts with Iowa were "extremely sparse," Judge Jarvey concluded, with admitted difficulty, that Fischer had purposeful contact with this forum sufficient to establish personal jurisdiction. On March 20, 1995, defendant filed a statement of objections to that report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C), and requested an evidentiary hearing.[1]

---

1. Although the court's review of Judge Jarvey's Report and Recommendation is de novo, and, further, that this court's consideration of the personal jurisdiction question follows an evidentiary hearing, thus making different standards applicable to this court's determination of personal jurisdiction in this matter, it is nonetheless worthwhile to keep in mind the objections Fischer asserts to Judge Jarvey's ruling. Fischer objects to the following findings and conclusions

stated in Judge Jarvey's Report and Recommendation: (1) that plaintiff relied on *Iowa R.Civ.P.* 56.2 as conferring personal jurisdiction rather than Iowa Code § 617.3; (2) that Fischer had sufficient contacts with the state of Iowa to establish the personal jurisdiction of Iowa courts over him; (3) that a meeting in Iowa lasting less than one hour at a location chosen solely for its mutual convenience to the parties is a sufficient contact to support personal jurisdiction; (4) that

This court held such an evidentiary hearing on the question of personal jurisdiction over the defendant on May 31, 1995. At the hearing, plaintiff Andre Q. Bell was represented by counsel William J. Lane of William J. Lane, P.C., in Sioux City, Iowa. Defendant Joseph M. Fischer was represented by counsel Alison McGinn of Gross & Welch, P.C., in Omaha, Nebraska. Both parties testified in person, and each submitted a number of exhibits detailing the course of the negotiations concerning purchase of the dental practice. This matter is now fully submitted, and the court turns to its de novo review of the motion to dismiss.

## II. FINDINGS OF FACT

The circumstances out of which this lawsuit arose and the court's findings of fact relevant to disposition of the motion to dismiss are as follows. In late 1992, some months after graduating from dental college, Fischer contacted Evan Myers & Associates (Myers) of Kansas City, Missouri, a firm that provides appraising, brokerage, and consulting services for dental practices, concerning his interest in purchasing a dental practice in the Kansas–Nebraska area. Myers provided Fischer with information concerning Bell's practice in Garnett, Kansas, and two other practices, also in the Kansas–Nebraska area. Pursuant to an agreement with Myers, Fischer was not to contact Bell or any other seller directly, but was to conduct all of his efforts to purchase a practice listed by Myers through Myers.

Eventually, however, apparently at the suggestion of Myers, the parties agreed to a face-to-face meeting to discuss terms under which Bell would agree to finance a portion of Fischer's purchase of the practice in Gar-

nett, Kansas. Each of the parties testified that it was his impression that it was the other party who desired the face-to-face meeting. Bell testified, however, that on March 26, 1993, he obtained from Myers the telephone number at which he could contact Fischer and then called Fischer to attempt to set up a meeting. Fischer returned Bell's call at some time within the next few days, and a meeting between the parties was arranged for March 31, 1993, in Onawa, Iowa.

At that time, Fischer was staying with his brother in Omaha, Nebraska, while working at a dental practice located in Macy, Nebraska. Bell was living in Cherokee, Iowa. Both parties testified that Onawa, Iowa, was selected, because both knew where the town was located, both could reach it easily, and they would have little trouble finding the restaurant where they had agreed to meet. Fischer testified that Onawa was one of the few towns he knew by name and location in Iowa, because it was on a major interstate highway. Both testified that the meeting could just as easily have been set in some other town on either side of the Missouri River.[2]

The meeting took place as scheduled on March 31, 1993. The parties disagree, however, about whether the meeting began at 6:00 p.m. or 7:00 p.m., and disagree rather strenuously about how long it lasted. Bell testified that the meeting lasted at least four hours, because he did not return home until after midnight. Fischer, to the contrary, asserted prior to the hearing in this matter that the meeting lasted for less than one hour. However, at the evidentiary hearing on this matter, Fischer, although still disputing that the meeting lasted four hours, acknowledged that by his own testimony, be-

Fischer had contacts with Iowa sufficient in quantity or quality for courts in Iowa to exercise personal jurisdiction over him; (5) that Bell met his *prima facie* burden to establish personal jurisdiction; (6) that exercise of personal jurisdiction in this case would comport with fair play and substantial justice; and (7) that the facts Fischer asserts as demonstrating insufficient contacts were "extremely sparse." Fischer therefore requested and this court has granted an evidentiary hearing, to determine whether the exercise of personal jurisdiction over Fischer is proper in this case.

2. Counsel for Bell suggested at the evidentiary hearing in this matter that the balance of convenience was in Fischer's favor, because Onawa was closer to Omaha or Macy than it was to Cherokee. However, the court is not impressed with any significant difference in convenience: Fischer had to drive for approximately one-and-a-quarter hours to reach Onawa from Omaha, while Bell drove for about two hours. The testimony of the parties suggests that the factor of greatest significance was not distance, but ease of identifying and reaching the meeting place.

cause he left the meeting at approximately 8:45 p.m., that it must have lasted at least one-and-three-quarters to two-and-three-quarters hours. Although the court does not find the length of the meeting to be determinative of the personal jurisdiction question here, it is apparent to the court that the disagreement over the length of the meeting is an example of the parties' attempts either to magnify or diminish the significance of the Onawa meeting to the negotiations over the purchase of the dental practice. The court finds more significant than the length of the meeting, however, the fact that the meeting was the only face-to-face contact between the parties and that no agreement was reached concerning Fischer's purchase of the practice or Bell's financing of part of the practice during that meeting.

Bell asserts that prior to the Onawa meeting, on March 20, 1993, Fischer made an offer to purchase the practice and that Bell accepted that offer on March 30, 1993. Whether or not a binding offer and acceptance occurred based on the exchange of documents in late March of 1993, or whether some other agreement was reached concerning purchase of the practice by Fischer, and, further, what the terms of such an agreement might be, are the key factual issues of this lawsuit. The parties presented extensive testimony and a number of exhibits concerning the course of the negotiations between the parties. For the purposes of the issue before the court, however, the court finds only that at the conclusion of the meeting in Onawa, the parties had a number of issues unresolved and that negotiations concerning the purchase of the practice continued after that meeting.

Although Bell asserts that Fischer initiated other contacts with Bell in Iowa besides the Onawa meeting, the court finds that all such contacts were conducted through Bell's agent, Myers, in Kansas City, Missouri. Although Bell testified to three attempts on his part during April and May of 1993 to contact Fischer by telephone after the meeting in Onawa, Fischer did not initiate these contacts and in fact did not return Bell's calls. During the last of Bell's attempts to contact Fischer by telephone, on May 1, 1993, Fisch-

er's father informed Bell that Fischer was not going to purchase the practice.

### III. LEGAL ANALYSIS

#### A. Review Of A Report And Recommendation

Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(B) & (C) provide authority for magistrate judges to hear dispositive matters upon referral from a judge of the district court and to submit proposed findings of fact and recommendations for disposition. *Fed. R.Civ.P.* 72(b) provides for review of the reports and recommendations of magistrate judges on such dispositive matters as follows:

A party objecting to the recommended disposition of the matter [dispositive of a claim or defense of a party] shall promptly arrange for the transcription of the record, or portions of it as all parties agree upon or the magistrate judge deems sufficient, unless the district judge otherwise directs. Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations. A party may respond to another party's objections within 10 days after being served with a copy thereof. *The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition* to which specific written objection has been made in accordance with this rule. *The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.*

Fed.R.Civ.P. 72(b). In this case, this court has elected to receive further evidence on the question of personal jurisdiction, which in turn changes the procedural posture for disposition of a motion to dismiss for lack of personal jurisdiction, as is explained in the next section of this ruling.

#### B. Challenges To Personal Jurisdiction

██ To defeat a motion to dismiss for lack of personal jurisdiction, Bell, as the non-

moving party, need initially make only a *prima facie* showing of jurisdiction. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383 (8th Cir.1995); *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 914 (8th Cir.1994) (hereinafter *Ever Best); Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir.1994); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir.1991) (hereinafter *Dakota Indus.*). Jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *Dakota Indus.*, 946 F.2d at 1387; *Fed.R.Civ.P.* 12(b)(2); *see also Kevlin Serv., Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995) ("When the district court rules on the motion without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper," quoting *Wilson v. Belin*, 20 F.3d 644, 647–48 (5th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994)). If the court does not hold a hearing and instead relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the non-moving party and resolve all factual conflicts in favor of that party. *Id.; see also General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1387 (8th Cir.1993) (citing *Dakota Indus.*).[3]

At trial or at an evidentiary hearing, however, the plaintiff bears the burden of proving personal jurisdiction by a preponderance of the evidence and this burden does not shift to the party challenging personal jurisdiction. *Dakota Indus.*, 946 F.2d at 1387; *Newhard, Cook & Co. v. Inspired Life Ctrs., Inc.*, 895 F.2d 1226, 1228 (8th Cir. 1990); *see also A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir.1993) ("Eventually personal jurisdiction must be established by a preponderance of the evidence, either at an evidentiary hearing or at trial."). The First Circuit Court of Appeals recently distinguished between a *prima facie* showing of personal jurisdiction and the preponderance-of-the-evidence standard applicable when the court holds an evidentiary hearing on the question of personal jurisdiction prior to trial:

> Virtually by definition, the preponderance standard necessitates a full-blown evidentiary hearing at which the court will adjudicate the jurisdictional issue definitively before the case reaches trial. In that mode, the court will "consider[ ] all relevant evidence proffered by the parties and mak[e] all factual findings essential to disposition of the motion." [*Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671, 676 (1st Cir. 1992) ].

*Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 146 (1st Cir.1995);[4]

3. The court's analysis of the adequacy of a nonmoving party's *prima facie* showing of personal jurisdiction requires that the court first examine whether the exercise of jurisdiction is proper under the forum state's long-arm authority, and then address whether the exercise of personal jurisdiction comports with due process. *Bell Paper*, 22 F.3d at 818; *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 63, 126 L.Ed.2d 32 (1993); *Dakota Indus.*, 946 F.2d at 1387–88; *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir.1991); *Midland Forge, Inc. v. Letts Indus., Inc.*, 395 F.Supp. 506, 513 (N.D.Iowa 1975) (The exercise of personal jurisdiction must be based on the existence of a statute or rule authorizing the assertion of jurisdiction). Following an evidentiary hearing, when the court must determine the question of its personal jurisdiction over the defendant, not simply consider the adequacy of the plaintiff's *prima facie* showing, the court follows essentially the same analytical process, albeit with a significantly different burden of proof, as is explained in the body of the opinion.

4. The First Circuit Court of Appeals offered some cautions concerning the use of a pretrial evidentiary hearing to determine personal jurisdiction questions:

> [T]his method should be used discreetly. For one thing, pretrial evidentiary hearings are relatively cumbersome creatures, and, if used routinely, can squander judicial resources. For another thing, since this method contemplates a binding adjudication, the court's factual determinations ordinarily will have preclusive effect, and, thus, at least in situations in which the facts pertinent to jurisdiction and the facts pertinent to the merits are identical, or nearly so, profligate use of the preponderance method can all too easily verge on a deprivation of the right to trial by jury.

*Foster–Miller, Inc.*, 46 F.3d at 146. The court does not find itself in such a precarious position in this case, because the facts pertinent to jurisdiction and the facts pertinent to the merits are by no means identical: the question of whether a single meeting in Iowa can establish personal jurisdiction of an Iowa court over the defendant

*accord Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 n. 3 (2d Cir.1994) ("If, however, the district court holds an evidentiary hearing, the plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence," citing *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 364 (2d Cir.1986); *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir. 1984)).

The court finds itself in this latter situation, following an evidentiary hearing. Thus, although this matter came before the court initially on objections to Judge Jarvey's Report and Recommendation, the court is in fact conducting its own examination of the personal jurisdiction question at the next level of specificity. The court must now decide whether plaintiff Bell has established by a preponderance of the evidence that this court may exercise personal jurisdiction over defendant Fischer. The court concludes that Bell has not met this burden.

### 1. Analytical process

 The determination of whether or not a court has personal jurisdiction over a non-resident defendant involves a "two-step analysis." *Northrup King Co.,* 51 F.3d at

in this case is entirely discrete from the question of the merits of the plaintiff's claim of breach of contract. This situation is the more certain, because the parties do not dispute the fact that no agreement for the purchase of the dental practice was reached in the meeting in Onawa.

The First Circuit Court of Appeals in *Foster–Miller, Inc.,* in fact considered a third level of scrutiny of the question of personal jurisdiction, also pursued by courts pretrial, that it deemed avoided the problems listed above as likely to result from a full-blown evidentiary determination of personal jurisdiction:

Unlike the prima facie standard, and like the preponderance standard, this third method, which we sometimes call the "likelihood standard,"

involves factfinding rather than merely making a ruling of law regarding sufficiency of the evidence to present a fact question. Like the first and unlike the second method, however, the third method avoids potentially troubling issues of "issue preclusion" or "law of the case" (at least when the court denies the motion) because a determination by such an intermediate standard ... does not purport to be a finding by the same standard on the same issue as will be decided at trial.

1386–87 (citing *Wines v. Lake Havasu Boat Mfg., Inc.,* 846 F.2d 40, 42 (8th Cir.1988)). First, the applicable state long-arm statute or rule must be satisfied, and, second, the court's exercise of jurisdiction must be consistent with the due process clause of the Fourteenth Amendment. *Id.* When a state construes its long-arm statute or rule to confer jurisdiction to the fullest extent permitted by the due process clause, the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process. *Bell Paper,* 22 F.3d at 818; *Soo Line R.R.,* 950 F.2d at 528.

### 2. Long-arm authority

In this case, Fischer disputes Judge Jarvey's conclusion that the long-arm authority for his service was *Iowa R.Civ.P.* 56.2,[5] which gives Iowa courts jurisdiction to the fullest constitutional extent, *Larsen v. Scholl,* 296 N.W.2d 785, 788 (Iowa 1980), rather than Iowa Code § 617.3, that part of the state's long-arm statute applicable to certain contract disputes between Iowa residents and non-residents. Fischer argues, at some length, that because Bell has failed to show that there was any contract to be performed

[*Boit,* 967 F.2d at 678].
*Foster–Miller, Inc.,* 46 F.3d at 146. This method allows the trial court to "steer a middle course" by engaging in "some differential factfinding, limited to probable outcomes as opposed to definitive findings of fact." *Id.* This method is most appropriate, however, "in the special circumstances in which the assertion of jurisdiction is bound up with the claim on the merits." *Id.* For the same reasons this court need have none of the fears expressed by the First Circuit Court of Appeals for a decision after an evidentiary hearing applying a preponderance of the evidence standard, it need not engage in such an intermediate determination of the personal jurisdiction issue here.

5. *Iowa R.Civ.P.* 56.2 provides, in pertinent part, that

[e]very corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

in whole or in part in Iowa, there is no ground for asserting long-arm jurisdiction over him pursuant to the statute. However, the court finds that Iowa Code § 617.3 is simply inapplicable here.

■ The statutory provision cited by Fischer does appear to pertain to the situation in which a non-resident, including an individual, has entered into a contract with an Iowa resident to be performed in whole or in part in Iowa. Iowa Code § 617.3. However, the statute defines the "non-resident person[s]" to which it pertains as including "any person who was, at the time of the contract or tort, a resident of the state of Iowa but who removed from the state before the commencement of such action or proceedings and ceased to be a resident of Iowa or, a resident who has remained continuously absent from the state for at least a period of six months following the commission of the tort." *Id.* Fischer does not fit this definition, because he has never been a resident of the state of Iowa. Thus, Iowa Code § 617.3 is inapplicable here.

■ Because Iowa Code § 617.3 is inapplicable to the circumstances and parties here, the court agrees with Judge Jarvey that the source of the long-arm authority over Fischer in this case is *Iowa R.Civ.P.* 56.2. Because the rule has been interpreted to confer jurisdiction to the fullest extent permitted by the due process clause, *Larsen,* 296 N.W.2d at 788, the personal jurisdiction inquiry here collapses into the single question of whether exercise of personal jurisdiction comports with due process. *Bell Paper,* 22 F.3d at 818; *Soo Line R.R.,* 950 F.2d at 528. The court concludes that it does not.

### 3. Minimum Contacts

■ The court may exercise personal jurisdiction over a defendant where the defendant has sufficient minimum contacts with the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Bell Paper,* 22 F.3d at 818.

Due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158; *Northrup King Co.,* 51 F.3d at 1386–87 (exercise of personal jurisdiction must be "consistent with traditional notions of fair play and substantial justice," quoting *International Shoe* ); *Bell Paper,* 22 F.3d at 818 ("Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice."). Thus, the determination of whether minimum contacts exist is not "one in which [the] answers will be written in 'black and white.'" *Ever Best,* 28 F.3d at 915 (quoting *Bell Paper,* 22 F.3d at 820, in turn quoting *Kulko v. California Super. Ct.,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132 (1978)).

■ In *Dakota Indus.,* the Eighth Circuit Court of Appeals summarized these due process requirements:

In a series of cases following *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court has elucidated the "minimum contacts" standard that must be satisfied before a nonresident can be subjected to the jurisdiction of a state's courts. Due process requires that out-of-state defendants have " 'fair warning' " that they could be "haled into" court in a foreign jurisdiction. This requirement "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that 'arise out of or relate to' those activities.

The contacts with the forum state must be more than " 'random,' " " 'fortuitous,' " or " 'attenuated.' " The due process clause forecloses personal jurisdiction unless the actions of the "defendant *himself* ... cre-

ate[d] a 'substantial connection' with the forum State." Once the court has found that the defendant purposefully established the requisite minimum contacts with the forum state, the court still must determine whether the assertion of jurisdiction comports with " 'fair play and substantial justice.' "

*Dakota Indus.*, 946 F.2d at 1389 (citations omitted); *see also Jarvis and Sons, Inc. v. Freeport Shipbuilding and Marine Repair, Inc.*, 966 F.2d 1247, 1249–50 (8th Cir.1992) (citing same standards); *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575–76 (8th Cir.) (citing same standards), *cert. denied*, —— U.S. ——, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992). In assessing the defendant's "reasonable anticipation" of being haled into court, "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Bell Paper*, 22 F.3d at 818; *Soo Line R.R.*, 950 F.2d at 528–29; *see also Northrup King Co.*, 51 F.3d at 1386–87.[6]

### a. Specific vs. general jurisdiction

 There are two broad types of personal jurisdiction: specific jurisdiction and general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984); *Bell Paper*, 22 F.3d at 819.

Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state. [*Helicopteros*, 466 U.S.] at 414, 104 S.Ct. at 1872. General jurisdiction, on the other hand, refers to the power of a state to adjudicate any cause of action

involving a particular defendant, regardless of where the cause of action arose. *Id.* at 415, 104 S.Ct. at 1872.

*Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir.1993). Specific jurisdiction may not be exercised where none of the actions complained of occurred within or had any connection to the forum state. *Id.; see also Helicopteros*, 466 U.S. at 414, 104 S.Ct. at 1872 (specific jurisdiction considers whether the cause of action asserted against the non-resident defendant "arises out of or relates to" the non-resident's contacts with the forum). The non-resident's contact with the forum may be based on contacts by its representative, because the Supreme Court has held that "when commercial activities are carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at least where [it] is a primary participant in the enterprise and has acted purposefully in directing those activities." *Bell Paper*, 22 F.3d at 820 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 n. 22, 105 S.Ct. 2174, 2186 n. 22, 85 L.Ed.2d 528 (1985)). For general jurisdiction to exist, the non-resident defendant must be engaged in "continuous and systematic general business contacts" within the forum. *Helicopteros*, 466 U.S. at 416, 104 S.Ct. at 1873.

Plainly, in this case, Bell can only be attempting to assert specific jurisdiction over Fischer, because on facts not in dispute, Fischer has had only the limited contact with this state of the meeting in Onawa. Thus, Bell must be attempting to assert specific jurisdiction over Fischer on the ground that his cause of action arose from or was related to Fischer's actions within the forum state. *Helicopteros*, 466 U.S. at 414, 104 S.Ct. at 1872; *Sondergard*, 985 F.2d at 1392.

---

**6.** In *Northrup King Co.*, the Eighth Circuit Court of Appeals recently formulated the "minimum contacts" standards as follows:

The contacts with the forum state are sufficient if the nonresident defendant "should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 567, because it has performed " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of

its laws.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). The inquiry is whether the non-resident defendant "has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182 (citations omitted).

*Northrup King Co.*, 51 F.3d at 1387.

### b. The five-factor test

The test for evaluating the propriety of jurisdiction under the due process clause requires the court to consider: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Northrup King Co.*, 51 F.3d at 1388 (citing *Gould* and *Land–O–Nod* ); *Bell Paper*, 22 F.3d at 818 (citing *Land–O–Nod Co.*); *Gould*, 957 F.2d at 576 (citing *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir.1977)); *Dakota Indus.*, 946 F.2d at 1390 (citing *Land–O–Nod Co.* ); *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338 (8th Cir.1983). Of these factors, the first three are the most important. *Northrup King Co.*, 51 F.3d at 1388 (first three factors are closely related, while "[t]he latter two issues are 'secondary factors' in the inquiry"); *Dakota Indus.*, 946 F.2d at 1390.

More specifically, the Eighth Circuit Court of Appeals has concluded that a defendant has insufficient contact with the forum state where the defendant has no office or agent or representative or employees in the forum state, does not do business in the forum state, *Jarvis and Sons v. Freeport Shipbuilding*, 966 F.2d 1247, 1250 (8th Cir.1992), has no bank accounts or property in the forum, does not advertise or solicit any business in the state, and does not design products for use in the state. *Gould*, 957 F.2d at 576. The record in this case shows that Fischer does not have any of these traditional contacts with Iowa.

### c. Quantity, quality, and relatedness of contacts

In this case, instead of relying on traditional contacts in the minimum contacts analysis, personal jurisdiction is asserted on the basis of the one meeting between the parties that occurred in Onawa. The meeting was admittedly closely related to the cause of action. *Northrup King Co.*, 51 F.3d at 1388. Indeed, Judge Jarvey appears to have relied heavily on the importance of this meeting to the negotiations between the parties as establishing a sufficiently significant minimum contact for personal jurisdiction purposes. However, this single factor cannot tip the balance in Bell's favor. *Id.* (first three factors are closely related).

The quality and quantity of the contacts are at least as significant as the relatedness of the contacts to the cause of action. *See Northrup King Co.*, 51 F.3d at 1388 (first three factors are most important; latter two are less significant). The single contact here does not speak well for the propriety of exercising personal jurisdiction on the basis of quantity of contacts, nor is it of sufficient quality. The Eighth Circuit Court of Appeals has held that visits to the forum are insufficient to support personal jurisdiction if they are too few in number and too slight in quality. *See Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 524 (8th Cir.1992) (defendant's two-day trip to forum to examine plaintiff's facilities and subsequent telephone and mail communications insufficient contact); *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1279 (8th Cir.1991) (defendant's employees' three trips to forum insufficient contact). Here, Fischer made fewer contacts with Iowa than the Eighth Circuit Court of Appeals held were insufficient in *Sybaritic* and *Morris*. Although Bell also asserts that Fischer communicated an offer to purchase the practice to Bell in Iowa, even if the communication could be deemed to have been directed to Bell in Iowa, and not to his agent in Kansas City, Missouri, correspondence between the parties alone does not establish sufficient minimum contacts. *See, e.g., Sybaritic, Inc. v. Interport Intern., Inc.*, 957 F.2d 522, 524 (8th Cir.1992) (defendant's telephone and mail communications to plaintiff insufficient contact); *FDIC v. Malmo*, 939 F.2d 535, 537 (8th Cir.1991) ("sporadic mail correspondence alone usually does not constitute 'minimum contacts' ").

The court concludes that there has been no consistent series of business contacts and visits by Fischer in this forum for the purpose of conducting the business between Fischer and Bell that is sufficient to sustain personal jurisdiction here over Fischer. Rather, only one meeting took place. How-

ever significant that meeting may ultimately be proven to have been in giving rise to a contract between the parties, if an agreement was in fact reached, the place of the meeting, Onawa, was entirely fortuitous. Thus, the *quality* of the contact still weighs against an Iowa court exercising personal jurisdiction over Fischer.

■■■ The due process clause forecloses personal jurisdiction unless the actions of the "defendant *himself* . . . create[d] a 'substantial connection' with the forum State." *Dakota Indus.*, 946 F.2d at 1389. Bell, not Fischer, suggested that the meeting take place in Iowa. For the purposes of this meeting, the court sees no reason why it could not just as easily have taken place on the Nebraska side of the Missouri River. Fischer may have had every purpose of meeting with Bell, but nothing suggests that he purposely did so in Iowa so as to avail himself of the laws of this forum or to avail himself of the opportunity to conduct business in this forum. *Bell Paper*, 22 F.3d at 818. Because the court has found that Fischer did not purposefully established the requisite minimum contacts with the forum state, the court concludes further that assertion of jurisdiction does not comports with " 'fair play and substantial justice.' " *Dakota Indus.*, 946 F.2d at 1389. The court concludes that fair play and substantial justice would not be served by assertion of personal jurisdiction on the basis of a single meeting between the parties that fortuitously occurred in the forum the plaintiff finds most favorable as establishing personal jurisdiction over the defendant.

### d. "Secondary factors"

■■■ Turning briefly to the factors of secondary importance, the interest of the forum state in providing a forum for its residents, and the convenience of the parties, *Northrup King Co.*, 51 F.3d at 1388, the court finds no reason to change its determination not to exercise of personal jurisdiction in this case. An Iowa court may have some interest in providing a forum for an Iowa resident to assert a breach of contract claim, but that interest is necessarily lessened if the contract involves the purchase of a practice located outside of the state pursuant to a contract, if one existed, that was not entered into in this state, did not require execution in this state, and was not made subject to Iowa law by its terms. Nor does the court find that there would be any prohibitive inconvenience to the parties of litigating in Kansas, for example, rather than Iowa, because the situs of the practice in question is in Kansas. One of the significant witnesses in this litigation will likely be the broker for the deal that went sour, if deal there ever was, and that broker, Myers, is not located in Iowa, but in Kansas City, Missouri.

Although it is perhaps a close question, the court concludes that Fischer's contacts with this forum have been no more than " 'random,' " " 'fortuitous,' " or " 'attenuated.' " *Dakota Indus.*, 946 F.2d at 1389. Bell has failed to establish that Fischer's contacts were sufficient in quantity or quality or sufficiently persistent over a period to time to "create a 'substantial connection' with the forum State," and therefore the assertion of jurisdiction in this case on the basis of the contacts alleged would not comport with "fair play and substantial justice." *Id.* This matter must therefore be dismissed for lack of personal jurisdiction.

### IV. CONCLUSION

Upon de novo review and the taking of additional evidence in an evidentiary hearing on the question, the court comes to a different conclusion from that reached by the chief magistrate judge who properly considered at that posture of the proceedings only the adequacy of plaintiff's *prima facie* showing of personal jurisdiction. Although the sole contact alleged as sufficient to allow this court to assert personal jurisdiction over the plaintiff, a brief meeting in this state at a place fortuitously selected for its mutual convenience to the parties, admittedly related closely to the cause of action, that contact was insufficient in quantity and quality to sustain personal jurisdiction. By agreeing to meet at a mutually convenient place that by happenstance was in Iowa, the defendant did not purposely direct his activities at this forum or seek to avail himself of the benefits of its laws. Finally, the state has little interest in providing

a forum for its resident to prosecute litigation involving an alleged contract not entered into in this state, not to be performed in this state, and involving purchase of a practice not located in this state, nor does the convenience of the parties weigh in favor of the exercise of personal jurisdiction over the defendant by the courts of this state.

In response to objections to the chief magistrate judge's report and recommendation, the court has taken further evidence, and in light of that further evidence and the additional burdens of proof placed upon plaintiff by an evidentiary hearing on the issue, the court now grants defendant's motion to dismiss for lack of personal jurisdiction. This matter is therefore dismissed in its entirety.

**IT IS SO ORDERED.**