950 F.2d 526
 60 USLW 2420
 SOO LINE RAILROAD COMPANY, a Minnesota corporation, Appellant,
v.
HAWKER SIDDELEY CANADA, INC., a Canadian corporation, Appellee.
SOO LINE RAILROAD COMPANY, a Minnesota corporation, Appellee,
v.
HAWKER SIDDELEY CANADA, INC., a Canadian corporation, Appellant.
 Nos. 91-1201, 91-1206.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 16, 1991.
Decided Dec. 2, 1991.
 
 Arthur S. Beeman, Minneapolis, Minn., argued (Terrence E. Bishop and Susan M. Kramer, on brief), for appellant Soo Line R. Co.
 Raymond A. Hayward, Minneapolis, Minn., argued (Peter W. Sipkins, on brief), for appellee Hawker Siddeley Canada, Inc.
 Before McMILLIAN, Circuit Judge, and FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 Soo Line Railroad Company ("Soo Line") appeals the district court's grant of summary judgment in favor of Hawker Siddeley Canada, Incorporated ("Hawker Siddeley"). Hawker Siddeley cross appeals the district court's determination that Hawker Siddeley was subject to the district court's jurisdiction. We vacate the judgment of the district court and remand with instructions to dismiss this suit for lack of personal jurisdiction over the defendant. We also dismiss Soo Line's appeal as moot.
 
 I. BACKGROUND
 
 2
 Hawker Siddeley, a Canadian corporation with its principal place of business in Canada, manufactures railroad cars. It has no offices or agents in Minnesota, though it did have a business arrangement with Unity Railway Supply Company ("Unity"), an Illinois corporation. Hawker Siddeley employed Unity to promote Hawker Siddeley's products in the United States and to refer potential customers to Hawker Siddeley's Canadian offices. Unity did not have authority to enter or bid on contracts or quote prices on behalf of Hawker Siddeley. Unity did not refer any Minnesota customers to Hawker Siddeley; in fact, Hawker Siddeley has made only one sale (worth less than $1,000) to a Minnesota purchaser in the last fifteen years. Although there is no precise evidence on this point, Hawker Siddeley concedes it is quite likely that many of its railcars (and wheels) have travelled on tracks in Minnesota.
 
 
 3
 Hawker Siddeley's cars and wheels are manufactured in compliance with standards established by the Association of American Railroads ("AAR").[1] All cars used in the interchange service market must comply with AAR standards. "Interchange service" refers to the capacity for railcars to be transferred from one railroad to another. The AAR's standards promote interchange by establishing requirements relating to both standardization and quality of equipment. The market covered by the AAR interchange service agreement is rather large; almost all railroads in Mexico, Canada, and the forty-eight contiguous United States are either members of, or signatories to, the AAR agreement.
 
 
 4
 In 1979, Hawker Siddeley sold a railcar to a Canadian division of North American Car Corporation ("North American") in Canada. In 1983, North American entered a management and services agreement with General Electric Railcar Services Corporation ("GERASCO"), a Canadian corporation whose principal place of business is in Alberta, Canada, that allowed GERASCO to lease the car on North American's behalf. In June 1984, GERASCO leased the car to Potash Company of America ("PCA"), a Canadian Corporation whose principal place of business is in Connecticut.
 
 
 5
 PCA used the railcar to transport potash. On February 1, 1986, while Soo Line was transporting the railcar on its tracks for PCA, the train derailed near Winona, Minnesota and damaged railcars, track, and freight. From post-accident investigations, Soo Line determined that the accident was caused by a defective wheel on PCA's railcar. In June 1989, Soo Line filed suit against Hawker Siddeley under the theories of strict product liability and negligence. The district court denied Hawker Siddeley's motion for dismissal due to lack of personal jurisdiction, but later granted its motion for summary judgment.[2] Soo Line appeals the grant of summary judgment and Hawker Siddeley cross-appeals the denial of the motion to dismiss.
 
 II. DISCUSSION
 
 6
 A two-step inquiry is employed when determining whether a federal court has jurisdiction over a non-resident party: "(1) whether the facts presented satisfy the forum state's long-arm statute, and (2) whether the nonresident has 'minimum contacts' with the forum state, so that the court's exercise of jurisdiction would be fair and in accordance with due process." Wines v. Lake Havasu Boat Mfg., 846 F.2d 40, 42 (8th Cir.1988). The Minnesota long-arm statute extends jurisdiction to the fullest extent permitted by the due process clause, Rostad v. On-Deck, Inc., 372 N.W.2d 717, 719 (Minn.) (en banc), cert. denied, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985); consequently, we only need to determine whether the district court's assertion of jurisdiction over Hawker Siddeley is consistent with the due process clause. See Toro Co. v. Ballas Liquidating Co., 572 F.2d 1267, 1269 (8th Cir.1978).
 
 
 7
 The due process clause requires there be "minimum contacts" between the defendant and the forum state before the forum state may exercise jurisdiction over the defendant. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Sufficient contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there," id. at 297, 100 S.Ct. at 567, and when "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). In assessing the defendant's "reasonable anticipation," there must be " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)).
 
 
 8
 Consistent with these principles, we must evaluate "(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir.1977). The analysis does not permit a mechanical application of these factors; for instance, the latter two factors "are only 'secondary factors' to be considered and are not determinative." Aaron Ferer & Sons Co. v. American Compressed Steel Co., 564 F.2d 1206, 1210 n. 5 (8th Cir.1977).
 
 
 9
 Soo Line contends Hawker Siddeley had significant contact with Minnesota by virtue of its compliance with AAR standards and requirements. In order to receive AAR approval, Hawker Siddeley had to submit its plans, products, and premises to testing and inspection. Soo Line argues that Hawker Siddeley identified and purposefully targeted a discrete market, and thus it could reasonably expect to be haled into court anywhere within the interchange service market.[3]
 
 
 10
 We cannot accept Soo Line's arguments for a variety of reasons. Soo Line's analysis, if correct, would subject Hawker Siddeley to suit anywhere its customers use its railcars. The Supreme Court, critical of an analysis in which "[e]very seller of chattels would in effect appoint the chattel his agent for service of process," has rejected this approach. World-Wide Volkswagen, 444 U.S. at 296, 100 S.Ct. at 566. In so doing, the Court reaffirmed that "the mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.' " Id. at 298, 100 S.Ct. at 567 (quoting Hanson, 357 U.S. at 253, 78 S.Ct. at 1239-40).
 
 
 11
 Soo Line's analysis is also flawed in that it equates purposeful availment of the opportunity to enter a market with purposeful availment of a forum state's benefits and protections. Although Hawker Siddeley has certainly done the former, it has not done the latter insofar as Minnesota is concerned. All products are sold in a "market," and every successful seller will purposefully avail itself of the appropriate market. Neither the fact that the interchange service market is a readily identifiable market nor the fact that it has formally established standards for goods and services means that every participant in the market is subject to suit everywhere its products are used within that market. Such a holding would be inconsistent with the requirement that minimum contacts arise from some purposeful act by the defendant directed at the forum. See Burger King, 471 U.S. at 476, 105 S.Ct. at 2184. Soo Line's position is further undermined by Hawker Siddeley's lack of sales in Minnesota. Cf. id. at 473, 105 S.Ct. at 2182 (opining that jurisdiction would be permissible if a company introduced products into the stream of commerce with the expectation that the forum's residents would purchase the product). In short, minimum contact analysis does not permit contact with a market to substitute for contact with a forum.
 
 
 12
 Soo Line gleans support for its position from Asahi Metal Industry Co. v. Superior Court of Cal., 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), where a plurality of the Court held that "conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum state...." Id. at 112, 107 S.Ct. at 1032. However, Hawker Siddeley did not design its railcars for use in Minnesota per se; it designed its railcars for use in most of North America.[4] The relationship between Hawker Siddeley's design of railcars and the State of Minnesota is too remote to qualify as "purposeful availment."
 
 
 13
 Based on the above discussion, application of the Aaron Ferer factors indicates that jurisdiction over Hawker Siddeley is lacking. The car in question was sold in Canada. Hawker Siddeley has had negligible sales in Minnesota and maintains no business presence in that state. It has not availed itself of the laws of the state. Even if many Hawker Siddeley railcars have travelled through Minnesota, this resulted from the actions of third parties and cannot be considered contact with the state by Hawker Siddeley. Hawker Siddeley receives financial benefits because its railcars can travel through Minnesota, but this benefit will not justify imposing personal jurisdiction because it does not arise from "a constitutionally cognizable" contact with Minnesota. World-Wide Volkswagen, 444 U.S. at 299, 100 S.Ct. at 568. Once the car was sold to North American, Hawker Siddeley lost all control over it; consequently, the fact that the accident occurred in Minnesota is the type of fortuitous occurrence that, alone, will not support jurisdiction. Cf. Burger King, 471 U.S. at 475, 105 S.Ct. at 2183. Hawker Siddeley's employment of an agent to increase sales in the United States is not contact with Minnesota; in fact, the record demonstrates that Hawker Siddeley's contract with Unity had no direct or indirect relationship with either this accident or with anyone in Minnesota. Ultimately, Hawker Siddeley's lack of contacts with Minnesota easily overrides both Minnesota's interest in providing a forum and whatever convenience may exist from having the suit take place in Minnesota.
 
 III. CONCLUSION
 
 14
 The district court cannot assert personal jurisdiction over Hawker Siddeley because Hawker Siddeley lacks sufficient contacts with Minnesota. We vacate the decision of the district court and remand with directions to dismiss without prejudice to Soo Line's re-filing in an appropriate forum. We also dismiss Soo Line's appeal as it is now moot.
 
 
 
 [1]
 It should be noted that the AAR is not a governmental entity
 
 
 [2]
 Because we vacate the judgment on other grounds, it is not necessary to discuss the court's rationale for entering summary judgment
 
 
 [3]
 At oral argument, Soo Line explained that it was not claiming jurisdiction existed simply because Hawker Siddeley introduced the railcar into the stream of commerce
 
 
 [4]
 The parties agree there is virtually no market in North America for railcars that do not comply with AAR standards