**SAUER, INC., Plaintiff,**

v.

**KANZAKI KOKYUKOKI MFG. CO., LTD., et al., Defendants.**

Civ. No. 4–93–CV–10373.

United States District Court,
S.D. Iowa,
Central Division.

March 9, 1994.

Edmund J. Sease, Daniel J. Cosgrove, Michael G. Voorhees, Kirk M. Hartung, and Donald H. Zarley, Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, IA, for plaintiff/counter-defendant Sauer.

Brent B. Green, Duncan, Green, Brown, Langeness & Eckley, Des Moines, IA, Edward J. Kessler, Robert Greene Sterne, Tracy–Gene G. Durkin, Sterne, Kessler, Goldstein & Fox, and George F. Pappas and Vicki Margolis, Venable, Baetjer, Howard & Civiletti, Washington, DC, for defendant Kanzaki Kokyukoki Mfg. Co., Ltd.

H. Robert Henderson, Richard L. Fix, Henderson & Sturm, Brent B. Green, Duncan, Green, Brown, Langeness & Eckley, Des Moines, IA, and Edward J. Kessler, Robert Greene Sterne and Tracy–Gene G. Durkin, Sterne, Kessler, Goldstein & Fox, George F. Pappas, Vicki Margolis, Venable, Baetjer, Howard & Civiletti, Washington, DC, for defendants/Counter–Claimants

Deere & Co. and B & W, Inc., a/k/a Any Season Equipment.

## ORDER ON PENDING MOTIONS

LONGSTAFF, District Judge.

THE COURT HAS BEFORE IT Defendant Kanzaki Kokyukoki's motion to dismiss, filed August 30, 1993. Plaintiff resisted the motion on September 13, 1993,[1] and Kanzaki filed a reply brief on October 16, 1993.

In addition, on October 8, 1993, plaintiff filed a motion to amend its complaint for a second time. Kanzaki resisted this motion on November 15, 1993, and Sauer filed a reply on November 23, 1993. Oral argument was heard before the Court on both motions on December 22, 1993.[2]

### I. KANZAKI'S MOTION TO DISMISS

#### A. Background

Plaintiff, Sauer, Inc. ("Sauer") is a Delaware corporation with its principal place of business in Ames, Iowa. Sauer is a patent holding company and owns the patents-in-suit. Defendant, Kanzaki Kokyukoki Manufacturing Co., Ltd. ("Kanzaki") is a Japanese corporation with its principal place of business in Hyogo, Japan. Kanzaki designs and manufactures gears, axles, and other related implement parts.

Plaintiff filed this patent infringement action on May 13, 1993, against Kanzaki, as well as codefendants Deere & Company (a Delaware corporation), and B & W, Inc. (an Iowa corporation).[3] Specifically, plaintiff alleges defendants are infringing two patents held by plaintiff covering integrated hydrostatic transaxles ("IHTs"). IHTs are install-

---

1. Plaintiff filed an errata to its brief on September 24, 1993, and supplemental declarations on November 15, 1993.

2. On August 24 and 25, 1993, Tuff Torq Corporation, a partially-owned subsidiary of Kanzaki, filed two related actions in the United States District Court for the District of Delaware. The first of these actions alleges Sauer and its related companies infringed two patents currently owned by Kanzaki and licensed to Tuff Torq. The second action seeks a declaratory judgment of invalidity and non-infringement of Sauer's patents Nos. 5,211,077 and 5,218,886, the subjects of the infringement action pending in this Court.

    Sauer moved to transfer to Iowa, or in the alternative, stay the first of these Delaware actions. It also moved to transfer to Iowa the

second Delaware action. Both motions were denied by the Delaware court on January 3, 1994.

As a result of this ruling, Sauer and Kanzaki filed supplemental pleadings in this Court. The Court has reviewed the Delaware order, as well as the supplemental pleadings. As noted by both parties, however, the Delaware court was not called to address Kanzaki's contacts with Iowa. The Delaware order therefore has no impact on Kanzaki's motion to dismiss. Furthermore, although relevant, the Delaware order is not conclusive with respect to Sauer's motion to amend.

3. The May 13, 1993, complaint alleged infringement only on plaintiff's patent no. 5,211,077. Plaintiff amended its complaint on June 18, 1993, to allege infringement on the second related patent, no. 5,218,886.

ed in lawn tractors apparently sold by defendants Deere & Company, and B & W both in Iowa and throughout the United States.

Kanzaki now moves to dismiss plaintiff's first amended complaint for lack of personal jurisdiction. Kanzaki claims the allegedly infringing IHTs are manufactured by Tuff Torq Corporation—not Kanzaki. Tuff Torq, a partially-owned subsidiary of Kanzaki, is a Tennessee corporation with its principal place of business in Morristown, Tennessee.

Kanzaki argues its only contacts with Iowa were four personal visits between 1987 and 1988 to discuss a proposed joint venture between Kanzaki and Sundstrand–Sauer, Sauer's predecessor. In contrast, Kanzaki alleges ten meetings regarding the venture were held in Japan. The proposed joint venture would have involved the creation of an integrated hydrostatic transmission; nevertheless, Kanzaki claims these visits to Iowa were not related to the alleged infringing activities.

Kanzaki further claims it does not maintain an office nor a sales representative in Iowa, does not otherwise solicit business in Iowa, and has insufficient contacts with Iowa to support the exercise of personal jurisdiction by this Court.

In response, plaintiff argues that although Kanzaki may not manufacture the allegedly infringing IHTs itself, it *licenses* the product to Tuff Torq. Plaintiff does not dispute the number of personal visits made by Kanzaki representatives to Iowa during 1987–88. Plaintiff alleges, however, that Kanzaki's 1987–88 visits were accompanied by numerous other communications, such as telephone calls, product shipments and letters. Plaintiff claims that the patents-in-suit were in fact the subject of Kanzaki's 1987–88 contacts with Iowa, and that these contacts are therefore sufficient to support jurisdiction.

During the hearing, plaintiff also produced evidence of other Kanzaki products that have made their way into Iowa between 1987 and 1990.

### B.   Applicable Law and Discussion

In evaluating a motion to dismiss for lack of personal jurisdiction, a court must first examine "whether the exercise of jurisdiction is proper under the forum state's long-arm statute." *Dakota Indus. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1388 (8th Cir.1991) (*citing Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 225 (8th Cir.1987)). If so, the next step is to determine "whether the exercise of personal jurisdiction comports with due process." *Id.*

Iowa's long-arm statute, Iowa Code § 617.3, itself incorporates a due process requirement. *See Health Care Equalization Committee v. Iowa Medical Society,* 501 F.Supp. 970, 983 (S.D.Iowa 1980), *aff'd* 851 F.2d 1020 (8th Cir.1988). Thus, in the present case, the exercise of jurisdiction depends on whether there are 'sufficient minimum contacts' between the nonresident defendant and the forum state so that asserting jurisdiction over the nonresident defendant is " 'consistent with traditional notions of fair play and substantial justice.' " *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir. 1992) (*quoting Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 654 (8th Cir. 1982)); *see also International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Five factors are relevant in evaluating due process: 1) the nature and quality of defendant's contacts with the forum state; 2) the number of contacts; 3) the connection between the cause of action and the contacts; 4) the interest of the forum state in the subject matter of the suit; and 5) the convenience of the parties. Of these factors, the first three are the most significant. *Gould v. P.T. Krakatau Steel,* 957 F.2d at 576.

In applying these criteria to the facts at bar, the Court finds Kanzaki fails to have sufficient minimum contacts with Iowa to remain a defendant in the present action.

The quality, nature and number of Kanzaki's contacts with Iowa are insufficient to permit the exercise of in personam jurisdiction. Kanzaki itself does not maintain an office in Iowa, nor does it transact any business here. Its four visits (and supplemental communications) to Iowa occurred during an 18 month period that ended approximately two and one half years before the patents-in-

suit were issued and this suit was filed. Furthermore, the allegedly infringing product is made by Tuff Torq—not Kanzaki.[4]

■ With respect to whether and to what degree the present infringement action is connected to Kanzaki's Iowa contacts, the Court again finds in favor of Kanzaki. As noted by Kanzaki, the patents-in-suit were not in existence at the time of Kanzaki's visits to Iowa. Additionally, it appears Kanzaki stopped manufacturing IHTs in 1991—again well before the patents-in-suit were issued. If this were a tort action alleging misappropriation of trade secrets, or tortious interference with a prospective business advantage,[5] the Court may have found a stronger connection between Kanzaki's Iowa contacts and the subject matter of this suit. Kanzaki could not reasonably have anticipated in 1987 and 1988, however, that its actions would cause it to be haled into an Iowa court to defend a patent infringement action, when the patents were not issued until 1993.

In view of the above analysis, the Court finds no need to discuss the remaining two criteria. Additionally, the Court finds the other Kanzaki products mentioned by Sauer during the December 22, 1993, hearing are not of sufficient consequence to render Kanzaki amenable to personal jurisdiction in this district. It appears the only shipment made by Kanzaki directly into Iowa was for 1860 axles sold to Sauer in 1987. There is no evidence of subsequent shipments by Sauer.

Kanzaki's motion to dismiss for lack of personal jurisdiction is GRANTED.[6]

## II. MOTION TO AMEND

Plaintiff seeks a second amendment to its complaint to add as a defendant Kanzaki's Tennessee-based subsidiary, Tuff Torq Corporation. Tuff Torq is the sole manufacturer and distributor in the United States of the product accused of infringing Sauer's patents. The proposed amendment would also add as plaintiffs several of Sauer's related companies[7], and add the issues currently pending in the two related Delaware actions. The stated purpose of the proposed amendment is to consolidate the three actions into one case for resolution by this Court.

Kanzaki resists Sauer's motion to amend on the basis that the proposed amendment would be duplicative of claims currently being litigated in Delaware. Because the Delaware actions are the first-filed case involving the Kanzaki patents, Kanzaki argues they should be allowed to proceed first. Secondly, Kanzaki contends Sauer's attempt to add Tuff Torq as a defendant would be futile in that Tuff Torq is not amenable to personal jurisdiction in this district.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely granted when justice so requires. Circumstances do exist, however, which warrant denial of leave to amend. These circum-

---

4. Sauer asserted during the hearing that Kanzaki representatives may have organized Tuff Torq's distribution network in the United States, and could have foreseen the product may have eventually reached Iowa. As noted by the Eighth Circuit, however, "minimum contact analysis does not permit contact with a market to substitute for contact with a forum." *Soo Line R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 530 (8th Cir.1991).

Assuming Kanzaki did control Tuff Torq's distribution, Kanzaki's relationship with Iowa is "too remote to qualify as 'purposeful availment.'" *Id.* at 530. The allegedly infringing product came into Iowa not by Kanzaki's purposeful act, but by way of a third-party, Deere, that incorporated Kanzaki's component part into equipment it eventually sold to Iowa retailers.

Likewise, the two additional cases cited by Sauer during the hearing are distinguished from the facts at bar. *See Loral Inc.*, No. 4–91–CV–70807 (S.D.Iowa, Jan. 12, 1993). In both, the allegedly infringing product was sold into the forum state by the defendant's subsidiary—not a third-party such as Deere.

5. The Court is not suggesting these causes of action would have been appropriately alleged in the present action.

6. Sauer also urges the Court to apply the "effects" test set forth in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *see also Dakota Indus. v. Dakota Sportswear*, 946 F.2d 1384, 1385 (8th Cir.1991). However, as argued by Kanzaki, "at best, Kanzaki is accused of intentionally inducing infringement of Sauer's patents, with the *foreseeable* effect of causing injury in Iowa, not with the purpose of doing so." Kanzaki Reply Brief, at 8 (emphasis added).

7. These companies are named as defendants in the first Delaware action.

stances include "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987) (citation omitted).

This Court finds no evidence of bad faith or undue delay on the part of Sauer in seeking this amendment. It is clear Sauer did not anticipate Tuff Torq would file parallel litigation in the Delaware court. Moreover, as noted by plaintiff in its reply brief, Kanzaki's arguments regarding duplicative litigation and "first-filed cases" are somewhat hypocritical in light of its own actions, and therefore, unpersuasive to this Court. The Court finds no circumstances exist to justify denying plaintiff's motion to amend with respect to the additional plaintiffs and issues from the Delaware litigation.

■ Nevertheless, it appears clear Tuff Torq will not be amenable to an assertion of personal jurisdiction by this Court. There is no evidence in the record that Tuff Torq has *any* direct contact with Iowa. It does not maintain an office or agents in Iowa, nor does it sell its services in Iowa. Plaintiff's proposed amendment is futile with respect to the addition of Tuff Torq as a defendant. Sauer's motion for leave to amend is thus DENIED with respect to the addition of Tuff Torq as a defendant.

In light of this holding, and the advanced status of the Delaware litigation, it remains uncertain whether plaintiff will wish to pursue an amendment in this action to add the proposed plaintiffs and a request for declaratory judgment of patent invalidity and non-infringement of Kanzaki's patents.

### III. CONCLUSION

For the reasons set forth above, Kanzaki's motion to dismiss is GRANTED. Sauer's motion for leave to amend is DENIED. However, if Sauer wishes to amend its complaint to add the additional plaintiffs and a include a request for declaratory judgment, it may do so within 20 days of the date of this order without further permission from this Court.

IT IS SO ORDERED.