**Jeno F. PAULUCCI, Plaintiff,**

v.

**WILLIAM MORRIS AGENCY, INC., and Robert I. Pack, Defendants.**

**Civil No. 3–96–843.**

United States District Court, D. Minnesota, Third Division.

Jan. 9, 1997.

George Gregory Eck, Robert J. Borhart, Dorsey & Whitney, Minneapolis, MN, for Jeno F. Paulucci.

William Leroy Sippel, Jonathan C. Miesen, Doherty Rumble & Butler, St. Paul, MN, Duane Ward Krohnke, Eric Edwin Jorstad, Faegre & Benson, Minneapolis, MN, Roger M. Adelman, Kirkpatrick & Lockhart, Washington, DC, Roger C. Simmons, Gordon & Simmons, Frederick, MD, for Robert I. Pack.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court upon Defendant Robert Pack's Motion to Dismiss for lack of personal jurisdiction and for failure to state a claim, as well as Plaintiff Jeno Paulucci's Motion for Replevin and for Costs and Reasonable Attorneys' Fees. For the reasons stated below, the Court grants in part and denies in part Defendant Pack's Motion to Dismiss. Further, the Court grants in part and denies in part Plaintiff's Motion for Replevin and for Costs and Reasonable Attorneys' Fees.

## BACKGROUND

In 1995, Jeno Paulucci ("Paulucci") directed James Tills ("Tills"), Vice President of Public Relations for Luigino's, Inc., Paulucci's Minnesota corporation, to locate an author to assist Paulucci in writing his autobiography. Tills contacted the William Morris Agency ("Morris Agency"), a New York corporation. Paulucci, now a Florida resident, entered into a contract with the author recommended by the Morris Agency, Robert Pack ("Pack"), a Maryland resident. The contract, dated August 20, 1995, but signed by Pack on November 25, 1995, provided, in part, that Pack would collaborate with and assist Paulucci in preparing a 100,000 word manuscript "within a year of signing" and that Paulucci would pay Pack the sum of $150,000 pursuant to an agreed-upon payment schedule. The contract contained a Minnesota choice-of-laws provision.

Pack researched and began writing the manuscript. Pack met with Paulucci in Florida at least once; however, Pack's main contacts were with Tills in Minnesota. Pack and Tills communicated frequently by telephone, letter, and facsimile. Paulucci claims that he made scheduled payments under the contract and sent irreplaceable personal records to Pack. Paulucci further alleges that Pack refused to cooperate and even published a defamatory letter regarding Paulucci. Paulucci maintains that he attempted to rectify the situation with Pack through the Morris Agency without success. Pack allegedly has refused to deliver the first half of the manu-

script and has refused to return Paulucci's personal property and monies paid.

Paulucci filed a five-count Complaint against the Morris Agency and Pack, alleging: (1) breach of contract; (2) fraud; (3) unjust enrichment; (4) libel; and (5) conversion and request for replevin. Paulucci voluntarily dismissed the action against Defendant Morris Agency pursuant to Rule 41(a)(1), thereby leaving Pack as the sole, individual defendant. The parties now bring various motions before the Court. Defendant Pack moves the Court to dismiss the Complaint arguing lack of personal jurisdiction and failure to state a claim upon which relief can be granted with respect to the alleged breach of contract, fraud, and libel counts. Plaintiff moves for replevin of his personal possessions from Defendant Pack and for costs and reasonable attorneys' fees. The Court addresses each motion in turn.

## DISCUSSION

### I. Defendant Pack's Motion to Dismiss

#### a. Lack of Personal Jurisdiction

For the purposes of Pack's Motion to Dismiss, the Court takes all facts alleged in the Complaint as true. *See Westcott v. Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). Further, the Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to Paulucci. *See Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." *Id.; see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Although the ultimate burden of proof on the issue of jurisdiction falls upon Paulucci, a nonmoving party need only make a prima facie showing of jurisdiction to defeat a motion to dismiss. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991). Jurisdiction need not be proved by a preponderance of the evidence until trial or until the Court holds an evidentiary hearing. *See id.* at 1387; Fed.R.Civ.P. 12(b)(2). If the Court does not hold a hearing and instead relies on pleadings and affidavits, the Court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *See id.; Woodke v. Dahm,* 873 F.Supp. 179, 192 (N.D.Iowa 1995). The Court applies those standards in the following discussion.

A federal court employs a two-step inquiry in determining whether it has jurisdiction over a nonresident party. First, the court must decide whether the facts satisfy the forum state's long-arm statute. If the statute has been satisfied, then the court must address whether the facts show that the nonresident has minimum contacts with the forum state such that the court's exercise of jurisdiction would be fair and in accordance with the Due Process Clause of the Fourteenth Amendment. *See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.,* 950 F.2d 526, 528 (8th Cir.1991); *Rostad v. On–Deck, Inc.,* 372 N.W.2d 717, 719 (Minn.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985).

Minnesota's long-arm statute, Minnesota Statutes § 543.19, extends jurisdiction to the fullest extent permitted by the Due Process Clause. *See Soo Line,* 950 F.2d at 528; *Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 411 (Minn.1992). The long-arm statute, however, provides explicit exceptions to this general proposition for defamation and privacy actions. Minn.Stat. § 543.19, subd. 1(d); *see Wheeler v. Teufel,* 443 N.W.2d 555, 558 (Minn.Ct.App.1989) (holding that the court had no personal jurisdiction pursuant to § 543.19, subd. 1(d) over nonresident for defamation claim). In other words, the statute provides an obstacle greater than due process to a court's exercise of personal jurisdiction over defamation and privacy actions. With respect to the defamation claim pleaded here, the Court must determine whether the Plaintiff's defamation claim satisfies the Minnesota long-arm statute. With respect to all other claims averred in the Complaint, the Court's inquiry is limited to determining whether an exercise of personal jurisdiction satisfies the constitutional requirements of due process. The following discussion first addresses the due process analysis of the nondefamation claims, followed by specific analysis of the defama-

tion claim under the Minnesota long-arm statute.

Under the Due Process Clause, the constitutional touchstone is whether Defendant has established sufficient minimum contacts with Minnesota such that the exercise of jurisdiction here does not violate traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In determining minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). There must be "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). The Eighth Circuit and the Supreme Court of Minnesota require consideration of the following five factors in determining whether the exercise of personal jurisdiction in any case comports with due process: (1) the quantity of the contacts with the forum state; (2) the nature and quality of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the state's interest in providing a forum; and (5) the convenience of the parties. *See Soo Line,* 950 F.2d at 529; *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir.1965); *National City Bank v. Ceresota Mill Ltd. Partnership,* 488 N.W.2d 248, 252–53 (Minn.1992). The first three factors are the most important. *See National City Bank,* 488 N.W.2d at 253.

 With respect to the manuscript-writing contract, Pack engaged in numerous contacts with Minnesota, particularly for the purpose of communicating with Paulucci's Minnesota-based agent, James Tills. In certain cases, even "[a] single transaction with the forum state can be sufficient to establish personal jurisdiction over a defendant." *Krambeer v. Eisenberg,* 923 F.Supp. 1170, 1174 (D.Minn.1996) (citing *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)); *see Marquette Nat'l Bank v. Norris,* 270 N.W.2d 290, 295 (Minn.1978). Here, Pack maintained personal contact with Tills in Minnesota via the exchange of numerous telephone calls, mailings and facsimiles for the purpose of entering into and fulfilling his contractual obligations. While it is true that Pack has never been in Minnesota, his physical presence is not required for the exercise of personal jurisdiction, so long as his conduct was " 'purposefully directed' toward residents of another State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (citations omitted) (holding that lack of physical presence in the forum is not fatal to jurisdiction). Although the Complaint does not allege that Pack initiated a specific quantity of contacts with Minnesota, the Complaint is clear, and reasonable inference can be drawn, that Pack was responsible for a substantial number of them.

For this Court to assert personal jurisdiction over Pack, Pack's conduct and connection with Minnesota must be such that he should reasonably anticipate being haled into court here. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). A defendant should "reasonably anticipate" litigation in an out-of-state forum when he has "purposely availed" himself of the " 'privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)).

This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity" of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State. Thus, where the defendant "deliberately" has en-

gaged in significant activities within a State ... he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475–76, 105 S.Ct. at 2183–84 (citations omitted) (emphasis in original).

In the case at bar, Paulucci directed his Minnesota agent, Tills, to locate a suitable author for his book project. Tills negotiated the contract with Pack from Minnesota. The contract contained a Minnesota choice-of-laws provision. Other than two Florida interviews with Paulucci, Pack's main contact for the manuscript project was Tills in Minnesota. In fact, Pack's ability to fulfill his contractual obligations necessitated his working with Tills. Pack and Tills exchanged numerous telephone calls, letters and facsimile communications. Research materials were sent from Minnesota to Pack in Maryland. Finally, Pack sent a partial draft of the manuscript to Minnesota for review. Despite the fact that Pack never physically entered Minnesota, Pack's conduct establishes a "substantial connection" with the forum. *Id.* at 475. Consequently, the Court finds that Pack's relationship with Minnesota was deliberate, not "random," "fortuitous," or "attenuated."

In addition, Paulucci has established that the relationship between the contacts and the various nondefamation causes of action in the Complaint are sufficient to subject Pack to the "specific" jurisdiction of Minnesota courts. Specific jurisdiction refers to jurisdiction arising from or related to a party's contacts with the forum. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984); *Sondergard v. Miles, Inc.,* 985 F.2d 1389, 1392 (8th Cir.1993). In contrast, "general" jurisdiction refers to "the power of the state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose," when a nonresident defendant has continuous and systematic contacts with the forum state. *Sondergard,* 985 F.2d at 1392. When a con-

troversy is related to a defendant's contacts with the forum, as is the case here, the critical focus in a jurisdictional analysis is on the "relationship among the defendant, the forum, and the litigation." *Helicopteros Nacionales,* 466 U.S. at 414, 104 S.Ct. at 1872; *see Krambeer,* 923 F.Supp. at 1174. In other words, specific jurisdiction "requires a nexus between the defendant's contacts with the forum state and the subject matter" of plaintiff's claims. *Zumbro, Inc. v. California Natural Prods.,* 861 F.Supp. 773, 779 (D.Minn.1994).

Here, Pack had innumerable contacts with Minnesota related to the contract, which is at the heart of the nondefamation claims in this case. During the negotiating phase of the parties' relationship, Pack contacted Tills in Minnesota on several occasions, expressing his interest in the project and presenting his qualifications. The negotiations, which eventually lead to an agreement between Pack and Paulucci, were conducted primarily between Pack and Minnesota-based Tills. After the formation of the contract, as discussed above, Pack continued to have numerous contacts with Minnesota related to the manuscript-writing process. This contract, and the materials exchanged because of it, is now the central focus of the parties' dispute. As such, Pack's only contacts with Minnesota consist of acts that give rise to the present controversy. Consequently, the Court concludes that these contacts provide an adequate basis for this Court's specific jurisdiction over Pack.

As a secondary consideration, Minnesota has an interest in providing a forum for its residents. While Paulucci is no longer technically a resident of Minnesota, since he spends a majority of his time in Florida, he continues to reside in Minnesota for the remainder of the year. Considering the ample amount of time Paulucci spends in Minnesota, coupled with the fact that the parties contracted to have Minnesota law controlling their arrangement, it is clear that Minnesota has an interest in providing a forum for this litigation. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984) ("[P]laintiff's residence in the forum State is not a separate require-

ment, and lack of residence will not defeat jurisdiction established on the basis of defendant's contacts"). In addition, Minnesota is not an inconvenient forum for Pack. The *Burger King* Court noted that " 'because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activities,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). Consequently, neither of these two lesser considerations act to deprive the Court of its authority to exercise personal jurisdiction over Pack.

### b. Minnesota Long–Arm Statute

■ The Court now turns to Paulucci's defamation claim. As discussed above, Minnesota's long-arm statute is generally interpreted to extend jurisdiction as far as permitted by the Due Process Clause. For defamation claims, however, the statute states: "This section applies if, in person or through an agent, the foreign corporation or nonresident individual ... [c]ommits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found: ... the cause of action lies in defamation." Minn.Stat. § 543.19, subd. 1(d)(3). In other words, the statute explicitly prohibits a Minnesota court from exercising personal jurisdiction over a nonresident tortfeasor in defamation when the "act" of defamation is committed outside of Minnesota. *See Wheeler v. Teufel*, 443 N.W.2d 555, 557 (Minn.Ct. App.1989); *see also Milsap v. Milwaukee J.*, 23 Media L.Rep. 1349, 1350 (D.Minn. Dec. 2, 1994). For the purposes of subdivision 1(d), an "act" of defamation does not occur simply by it being received in the state where the injury takes place. *See Wheeler*, 443 N.W.2d at 557–58 (holding that the "act" of defamation did not occur when the resulting "injury" took place); *Milsap*, Media L.Rep. at 1350 (holding that the "act" of defamation occurred when the libelous newspaper column was written in Wisconsin, not distributed in Minnesota). Here, the allegedly defamatory act was a letter written by Pack in Maryland. This letter was then transmitted to Tills in Minnesota. Since the allegedly libelous act occurred in Maryland, outside the State of Minnesota, the long-arm statute prohibits the Court from exercising jurisdiction over Pack as to Paulucci's defamation claim.

■ Relying on a Minnesota Supreme Court decision, Paulucci argues that the Court has jurisdiction over Pack with respect to the defamation claim, notwithstanding the plain language of the statute, since it has personal jurisdiction over Pack with respect to the other claims contained in the Complaint. *Valspar v. Lukken Color Corp.*, 495 N.W.2d 408 (Minn.1992). The Court does not agree. First, Paulucci's assertion ignores the distinction between "general" and "specific" jurisdiction. For a court to assert specific jurisdiction over a nonresident defendant, a nexus must exist between the defendant's contacts with the forum and the subject matter of the claims. *See Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280–81 (8th Cir.1991) (stating that the court's inquiry in "specific" jurisdiction analysis is limited to "whether any of plaintiff's claims arise out of or are related to the Minnesota contacts of the defendants, i.e., whether the defendants are properly subject in this case to specific jurisdiction."); *Zumbro*, 861 F.Supp. at 779 (holding that the court must find a nexus for each claim individually when its authority is premised on specific jurisdiction). Here, it strains credulity to characterize Pack's contacts with Minnesota as "continuous and systematic," in the nature of those contacts giving rise to general jurisdiction. *See Helicopteros*, 466 U.S. at 416, 418–19, 104 S.Ct. at 1872–73, 1874–75. Instead, as discussed above, whether the Court may assert jurisdiction over Pack is a question of specific jurisdiction. As such, it does not necessarily follow that because a nexus exists between Pack's contacts with Minnesota and the subject matter of *some* claims that a nexus exists for *all* claims. In short, the fact that the Court has jurisdiction over Pack with respect to the nondefamation claims is inapposite as to its power to adjudicate the defamation claim itself.

Second, the issue before the *Valspar* court was whether subdivision 3 of the long-arm statute places additional barriers to personal jurisdiction beyond those of the Due Process Clause. 495 N.W.2d at 409. Subdivision 3 of the statute states: "Only causes of action arising from acts enumerated in subdivision 1 may be asserted against a defendant in an action in which jurisdiction over the defendant is based upon this section." Minn.Stat. § 543.19, subd. 3. The *Valspar* court held that subdivision 3 by itself does not curtail a court's power to assert personal jurisdiction over nonresidents to a greater extent than the restrictions placed on it by the Due Process Clause. *Id.* at 411. Instead, the court reaffirmed its position that "[i]f the personal jurisdiction requirements of the federal constitution are met, the requirements of the long-arm statute will necessarily be met also. Thus, when analyzing *most* personal jurisdiction questions, Minnesota courts may simply apply the federal case law." *Id.* (emphasis added). This case presents one of the statute's anomalies, and falls outside "most" of the jurisdictional questions. The statute clearly proscribes assertion of personal jurisdiction over nonresident tortfeasors in defamation when the "act" occurs outside of Minnesota. Consequently, the Court dismisses Paulucci's defamation claim for lack of personal jurisdiction.

### c. Failure To State A Claim

Pack further argues that the Complaint fails to state a claim upon which relief can be granted with respect to the breach of contract claim (Count One), the fraud claim (Count Two), and the libel claim (Count Six). Because the Court has already dismissed the libel count for lack of personal jurisdiction, it does not address the claim again here. As for the other two counts, the Court discusses each in turn.

First, Pack claims that the Complaint fails to state a claim for breach of contract because the final manuscript delivery date had not yet expired. This argument fails on its face. Paulucci's breach of contract claim is based on more than an alleged failure to deliver a final manuscript in a timely fashion. The contract created obligations to provide interim cooperation and draft delivery, which

Pack allegedly has failed to meet. Thus, in light of the applicable standard of review and the liberal pleading rules, the Court rejects the motion to dismiss with respect to the breach of contract claim.

Second, Pack argues that Paulucci has failed to state a claim for fraud. Under Federal Rule of Civil Procedure 9(b), a Complaint must allege with particularity the circumstances constituting fraud. To meet this requirement, the plaintiff must "include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982). Count Two of the Complaint states that Pack "engaged in a fraudulent pattern of activity regarding [his] intent to provide fully and faithfully an autobiography acceptable to Mr. Paulucci," and "engaged in this pattern of fraud and misrepresentation to secure unearned advances and other compensation, and for financial gain." These averments make sweeping allegations of fraud without a semblance of the particularity required by the Rules. Such all-encompassing allegations "fail to apprise defendants of the claims against them and the acts relied upon as constituting the fraud charged." *Id.* Consequently, the Court dismisses Count Two without prejudice and with leave to amend.

## II. Plaintiff Paulucci's Motion for Replevin and for Attorneys' Fees and Costs

The Court next turns to Paulucci's motion for the return of his personal property. Pack challenges the motion by first arguing that the Court has no jurisdiction because of Minnesota's venue statute. In particular, Pack contends that venue for an action in replevin is proper only in the "county in which the taking occurred or in the county in which the property is situated." Minn.Stat. § 542.06. Since the property at issue was neither "taken" in Minnesota, nor is currently situated in Minnesota, Pack claims that the Court's exercise of jurisdiction over the property is prohibited by state law.

■ Pack's argument rests on the presumption that the action before the Court is local in nature and therefore controlled by state law. The Court does not agree. "Proper venue is determined by the characterization of the action as either local or transitory—a determination which, in turn, depends on the type of relief sought." *Raphael J. Musicus, Inc. v. Safeway Stores, Inc.*, 743 F.2d 503, 506 (7th Cir.1984). "Generally, local actions are those which directly affect real property, and traditionally such actions must be brought in the district in which the real property is located. Transitory actions, on the other hand, can usually be brought in any court having personal jurisdiction over the defendant." *Id.* at 505–06 (internal citation omitted). "The determinative element in defining a transitory action is whether the type of relief requested is of a 'personal' nature so that the court, in acting upon the person or personal property of the defendant which is within its control, need not act upon the lands involved." *Id.* at 508.

■ Pack's error is his characterization of the action as local in nature, as opposed to transitory. It is true that courts have cut both ways on the question of whether an action in replevin of personal property is local or transitory. *See Central Transp., Inc. v. Theurer, Inc.*, 430 F.Supp. 1076, 1079 (E.D.Mich.1977) (holding replevin claim for tires was local action); *but see Firestone v. Galbreath*, 722 F.Supp. 1020, 1028 (S.D.N.Y. 1989) (holding replevin claims for furnishings and funds transitory actions) (citing *Musicus*, 743 F.2d at 511 n. 6). The question of characterization, however, becomes less contentious when the action joins other claims. For example, in *Musicus*, the Seventh Circuit dealt with the issue of characterizing an action filed in the United States District Court for the Northern District of Illinois that joined various claims related to real property located in Nebraska and Montana, including breach of contract, fraud, and trespass. *Musicus*, 743 F.2d at 508–511. The court held that the action was transitory in nature because the primary relief sought was the adjudication of rights and obligations under contested leases, which was largely personal in nature. *Id.* at 508–09. The fact that the action included a claim for trespass to land—a local action—did not mandate a different result. *Id.* at 511. Instead, the court held that

> at least in a case such as this one, in which the suit for damages based on injury caused by trespass is joined in the same action with requests for damages based on breach of contract and fraud, the entire action may be brought in a single proceeding.
>
> ... Although this action may have an indirect effect upon lands lying outside the jurisdiction of the district court, the action is transitory in nature and the court is required only to have *in personam* jurisdiction over the defendant.

*Id.* (footnote omitted).

Like the action brought in *Musicus*, the case at bar is transitory in nature. First and foremost, Paulucci seeks a determination that Pack has breached his contractual obligations and must pay damages for the resultant injuries. This is evidenced by the fact that Paulucci seeks damages for breach of contract (Count One), fraud on the contract (Count Two), unjust enrichment (Count Three), and conversion (Count Four). The damage remedies prayed for involve an attempt to adjudicate the rights and obligations of the parties under the manuscript-writing contract. "As such, they must also be characterized as largely personal in nature," and therefore transitory. *Id.* at 509. The fact that the action also joins a claim for replevin of personal property (Count Four) does not change this result. This is true regardless of whether the Court views replevin of personal property as local or transitory in its own right—an issue that the Court need not decide here. Instead, where the suit joins a request for the return of personal property with several other requests for damages based on breach of contract, fraud, unjust enrichment, and conversion, the entire action may be brought in a single proceeding. *See id.* at 511. Consequently, since the action is transitory in nature and the Court has personal jurisdiction over Defendant Pack, the Court finds that venue is proper in the District of Minnesota. *See* 28 U.S.C. § 1391(a).

The Court now addresses the merits of Paulucci's motion for return of his personal property. Pursuant to Federal Rule of Civil Procedure 64, this Court must look at the remedies provided by Minnesota law for pre-judgment seizure of personal property. Section 565.21 of the Minnesota Statutes permits a claimant in an action to recover possession of personal property to obtain possession of the property prior to a final judgment in the matter. A claimant is entitled to immediate possession of the property at issue if the claimant has demonstrated the probability of success on the merits of its claim, unless the court makes the following findings:

(a) Respondent has shown a defense to the merits of claimant's claim, the defense is a fair basis for litigation and the defense would, if established at hearing on the merits, entitle respondent to retain possession of the property;

(b) The interests of respondent cannot be adequately protected by the bond filed by claimant pursuant to section 565.25, subdivision 1 if the property is delivered to the claimant prior to final decision on the merits; and

(c) The harm suffered by the respondent would be substantially greater than the harm which would be suffered by the claimant if the property were not delivered to the claimant prior to final decision on the merits.

Minn.Stat. § 565.23, subd. 3.

■ For most of the materials listed in Exhibit B of the Complaint, Paulucci has met his burden of showing a probability of success on the merits entitling him to possession of the property. The bulk of the materials at issue are Paulucci's personal records delivered to Pack for the sole purpose of assisting him in writing the manuscript. As to those items delivered to Pack, there is no question that Paulucci was and is the rightful owner, and is entitled to immediate possession.

■ Nonetheless, the Court agrees with Pack's argument that Paulucci has not shown a probability of success on the merits as to his right to possess the audiotapes containing Pack's 1995 interviews with Paulucci in Sanford, Florida (the "Florida audiotapes"). Paulucci has not sufficiently demonstrated that the parties' contract confers rights in these items to Paulucci. While the contract grants Paulucci exclusive ownership rights in the manuscript and autobiography, including the copyrights to both, it does not address with any clarity ownership and possessory rights to items created by Pack in connection with the project. As such, Paulucci has not demonstrated a probability of success on the merits entitling him to possession of these audiotapes. Since Paulucci has not met his burden under § 565.23, subdivision 3, Pack may retain the Florida audiotapes pending final decision on the merits, but shall not sell, dispose of or otherwise alter the property in the interim.

In short, Paulucci has demonstrated a probability of success on the merits as to all items listed in Exhibit B of the Complaint, except the item captioned "Audiotapes-various: Robert Pack interviews of Jeno, Sanford, FL, November 1995." These items, excluding the Florida audiotapes, shall be returned to Paulucci pending a final decision on the merits, unless the Court makes the findings outlined in § 565.23, subdivision 3.[1] These three findings are discussed in turn.

■ First, as a defense to the merits of Paulucci's claim, Pack argues that he is entitled to a possessory lien, or artisan's lien, and right of detainer as to the materials provided to him by Paulucci. See Minn.Stat. §§ 514.18, 514.19(2) & (5). Pack readily admits that no Minnesota case law exists applying the statutory mechanic's lien and detainer statutes to materials provided to an individual for the purpose of authoring a manuscript. Pack argues, however, that the statutes are drafted broadly, and he invites the Court to extend the principles to this

---

1. In his opposing memorandum Pack notes that some of the items listed in Exhibit B have been described incorrectly and offers an accurate description. The Court does not view any of the errors in description as fatal to Paulucci's request for the return of his personal items. *See*

*Wade v. National Bank of Commerce,* 144 Minn. 187, 174 N.W. 889, 890 (1919) (holding that property sought in replevin action need only be described with reasonable certainty). The items listed, as corrected, are subject to the Court's order.

case. The Court declines this invitation. The plain language of the statutes reveal their inapplicability here. The materials were delivered to Pack for the purpose of assisting him in the writing project, not for the purpose of storage or care. In addition, nothing in the contract contemplates Pack receiving compensation for his "storage efforts." Finally, neither party contemplated the materials being changed, altered, or enhanced during Pack's use of them. The items were merely resource materials temporarily delivered to Pack to aid him in writing the autobiography. As such, the mechanic's lien and detainer statutes are inapposite to this case. Consequently, Pack has failed to establish a defense to the merits of Paulucci's claim sufficient to prevent pre-judgment seizure of the property under § 565.23, subdivision 3(a).

Second, the Court finds that Pack's interest can be adequately protected by the bond that Paulucci is required to file pursuant to § 565.25, subdivision 1. *See* Minn.Stat. § 565.23, subd. 3(b). The Court assigns a fair market value of $10,000 to the materials at issue and the bond filed by Paulucci for pre-judgment seizure should be $15,000. *See* Minn.Stat. § 565.25, subd. 1. The crux of Pack's challenge to this finding is his assertion that the materials may be relevant to his defense and that no bond would provide adequate security that these materials will be available to him for that purpose. This argument presumes, without show of cause, that Paulucci will intentionally alter his own property to flout federal discovery rules. The Court does not embrace this presumption and notes that appropriate discovery sanctions are available in the unlikely event that it should occur. Accordingly, the Court makes seizure of the property contingent upon Paulucci's filing of the $15,000 bond approved by the Court, as provide in § 565.25, subdivision 1.

Third, the Court does not find that the harm suffered by Pack would be substantially greater than the harm suffered by Paulucci if the property were not delivered to Paulucci prior to a final decision on the merits. *See* Minn.Stat. § 565.23, subd. 3(c). This lawsuit is fundamentally a breach of contract

action. The disposition of the resource materials used by Pack in the course of his writings is a peripheral matter at best. Consequently, the Court concludes that the balance of harms does not weigh in favor of Pack's retention of the property at issue.

Paulucci claims he is entitled to an award of attorneys' fees and costs for bringing the replevin motion because of Pack's "bad faith." The Court does not find that Pack acted in bad faith. Therefore, at its discretion, the Court determines that Paulucci is not entitled to an award of attorneys' fees and costs for bringing the replevin motion.

**CONCLUSION**

The Court has personal jurisdiction over Pack to adjudicate the nondefamation claims raised by Paulucci. As to the defamation claim (Count Four), however, the Minnesota long-arm statute prohibits the Court from exercising jurisdiction over Pack and, accordingly, the claim is dismissed without prejudice. The Court finds that the Complaint states claims upon which relief can be granted, with the exception of the claim for fraud (Count Two), which fails to meet the pleading requirements of Federal Rule of Civil Procedure 9(b). As such, the fraud count is dismissed without prejudice and with leave to amend. As to Paulucci's motion for replevin, the Court orders Pack to return to Paulucci all items listed in Exhibit B of the Complaint, with the exception of the Florida audiotapes. Pack shall retain possession of the Florida audiotapes subject to the requirements that he shall not sell, dispose of, or otherwise alter the items pending a final decision on the merits. Finally, the Court finds that Paulucci is not entitled to attorneys' fees and costs for bringing his motion for replevin.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss (Clerk's Doc. No. 12) is GRANTED with respect to Count Two (Fraud) and Count Four (Libel) of the Complaint and is DENIED in all other respects;

2. Count Two (Fraud) of the Complaint is DISMISSED WITHOUT PREJUDICE WITH LEAVE TO AMEND;

3. Count Four (Libel) of the Complaint is DISMISSED WITHOUT PREJUDICE;

4. Plaintiff's Motion for Replevin of Personal Possessions and for Costs and Reasonable Attorneys' Fees (Clerk's Doc. No. 5) is GRANTED in part and DENIED in all other respects;

5. Defendant shall deliver to Plaintiff all items listed in Exhibit B of the Complaint and all other personal materials delivered to Defendant by Plaintiff even though not listed in Exhibit B, excluding the item captioned "Audiotapes-various: Robert Pack interviews of Jeno, Sanford, FL, November 1995," within 30 days of this Order. The materials shall be delivered to the location agreed upon by the parties;

6. Defendant shall not damage, conceal, waste, sell, or otherwise alter the condition of the materials listed in Exhibit B, including the item captioned "Audiotapes-various: Robert Pack interviews of Jeno, Sanford, FL, November 1995," and all other materials not so listed that are to be returned to Plaintiff, pending final hearing on the merits;

7. Plaintiff shall file a replevin bond in the amount of $15,000, in accordance with Minn.Stat. § 565.25, subd. 1, prior to Defendant's return of the materials at issue;

8. Defendant is not required to file a bond;

9. If any materials here ordered to be returned to Plaintiff remain in the possession of Defendant beyond the 30 days after the date of this Order, Plaintiff may move the Court for an order directing the United States Marshals to take immediate possession of any such materials and deliver the seized materials to Plaintiff; and

10. Pursuant to Minn.Stat. § 565.26, subd. 1(c), Plaintiff is authorized to sell or otherwise dispose of the property pending a final hearing on the merits.